## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHERYL MIXON, on behalf of herself and others similarly situated, | |
| Plaintiff, | Case No. 20-cv-02069 |
| v. | Judge Mary M. Rowland |
| CONTRACT CALLERS, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl Mixon ("Mixon") brings this putative class action against Contract Callers, Inc. ("Contract Callers") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Contract Callers has filed a motion to dismiss pursuant to Rule 12(b)(6). (Dkt. 12). For the reasons stated herein, this motion is granted.

## I. Background

The following factual allegations are taken from the Complaint and are accepted as true for the purposes of this motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Mixon defaulted on a debt that she owed to her cellular service provider, T-Mobile.[1] A debt collection agency called Receivables Performance Management, LLC sent Mixon a letter on June 30, 2017, attempting to collect that debt. More than two years later on September 23, 2019,

---

[1] The Complaint does not provide a default date.

Contract Callers sent Mixon a second letter about this debt.[2] That letter included information about the debt, such as the identity of the creditor (T-Mobile), the account number, and the current balance owed. It also said that Contract Callers could obtain a "copy of a judgment" for Mixon to verify the debt. (Dkt. 1, Ex. B). The Contract Callers letter did not indicate that any statute of limitations had elapsed, nor did it inform Mixon that action on her part, such as partial payment, could expose her to liability even if the statute of limitations had lapsed. Because this was a form letter, Mixon believes that similar letters were sent to more than forty recipients.

## II. Legal Standard

A motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotation marks and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts the plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in their favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). Dismissal for failure to state a claim is proper

---

[2] The letter from Contract Callers is dated July 22, 2019, (Dkt. 1, Ex. B), but the Complaint says that it was "mailed on or about September 23, 2019." (Dkt. 1, ¶ 18).

"when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### III. Analysis

Mixon argues that the letter from Contract Callers was "false or misleading" as defined by the FDCPA in 15 U.S.C. § 1692e. She also argues that it amounted to an "unfair or unconscionable" means of collecting a debt, per 15 U.S.C. § 1692f, because it "attempted to collect a time-barred debt without informing Plaintiff that she could not be sued on the debt" or "that certain actions such as payments could reset the statute of limitations." (Dkt. 1, ¶ 43). This claim is premised on the argument that the debt is subject to a two-year federal statute of limitations. That statute of limitations can be found in the Federal Communications Act ("FCA"), which provides that:

> All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after.

47 U.S.C. § 415(a). Neither T-Mobile nor Contract Callers has filed suit against Mixon over this debt. However, Contract Callers argues that it *could* file breach of contract, account stated, or *quantum meruit* claims in Illinois state court because such state law causes of action are subject to five- or ten-year statutes of limitations under Illinois law, not the two-year federal statute of limitations.[3] Therefore, Contract Callers argues collection of Mixon's debt was not time-barred when their collection

---

[3] Suits over promissory notes, bills of exchange, written contracts or other evidence of indebtedness in writing are subject to a ten-year statute of limitations. 735 ILCS 5/13-206. The catch-all statute of limitations for civil actions in Illinois is five years. 735 ILCS 5/13-205.

letter was sent. Mixon counters that these state law claims are subject to the FCA's statute of limitations when the underlying consumer debt is owed to a telephone carrier, because state statutes of limitations are preempted by federal law. The parties agree that if suits to collect the debt were not time-barred, the letter was not false, misleading, unfair, or unconscionable.

### A. The Federal Communications Act

Congress enacted the FCA in 1934 in order to curb AT&T's monopoly and "make available [. . .] a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges[.]" *Espinal v. AFNI, Inc.*, No. 17 CV 3439, 2018 WL 2733366, at *3 (S.D.N.Y. June 7, 2018) (citing 47 U.S.C. § 151. Pub. L. 73-416, 48 Stat. 1064 (codified, as amended, at 47 U.S.C. §§ 151–623); and citing *Ting v. AT&T*, 319 F.3d 1126, 1130 (9th Cir. 2003)). The FCA forced telephone carriers to submit their rates to the Federal Communications Commission ("FCC") for approval in order to ensure that they were "just and reasonable." 47 U.S.C. § 201(b). Carriers could not deviate from these "tariffed" rates once they were approved, even if the tariffed rates conflicted with a telephone consumer's service contract. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998).

As noted above, the Act included a statute of limitations at § 415(a) that required carriers to file actions to recover "their lawful charges" within one year from the time the cause of action accrued. This was amended to "two years" in 1974. *See* Pub. L. 93-507, 88 Stat. at 1577–78 (codified as amended at 47 U.S.C. § 415(a)–(c)).

4

The original Act also included a saving clause that provides "[n]othing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." 47 U.S.C. § 414.

Cell phone carriers have been subject to the FCA since 1993. Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 6002(b)(2)(A), 107 Stat. 312, 393 (codified as amended at 47 U.S.C. § 332). However, the Federal Communication Commission (FCC) has never required that they file tariffed rates. 47 C.F.R. § 20.15. In 1996 the FCC stopped requiring tariffed rates from most carriers, cellular and otherwise. *See* Notice of Proposed Rulemaking, 11 F.C.C.R. 7, 141 (1996). This process has been called "detariffing."

Section 332(c)(3) of the FCA, which governs cellular service, provides that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3). The phrase "terms and conditions" is not defined in the FCA,[4] but the statute's legislative history suggests that it included "such matters as [. . .] billing disputes." *Torres v. Midland Credit Mgmt., Inc.*, No. 17 CV 2794, 2018 WL 2304771, at *8–9 (E.D.N.Y. May 21, 2018) (citing H.R. REP. 103–111, 261, 1993 U.S.C.C.A.N. 378, 588).

---

[4] The 1993 House Committee Report states, in relevant part, that by "terms and conditions," the Committee intends to include such matters as "customer billing information and practices and billing disputes and other consumer protection matters." H.R. REP. 103-111, 261, 1993 U.S.C.C.A.N. 378, 588.

### B. Federal Preemption

The Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law." *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (quotations and citations omitted). Because of the importance of "the historic police powers of the states" in our federal system, however, there is a strong presumption against preemption. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see also Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013).

Congress can expressly preempt state law in federal statutory language, or it can impliedly preempt state law. *See Hillsborough Cnty., Fla.*, 471 U.S. at 713. Implied preemption includes field preemption,[5] where federal law "is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation," or "the federal interest [in the field] is so dominant" that it "preclude[s] enforcement of state laws on the same subject," *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Implied preemption can also take the form of conflict preemption, if (1) complying with both federal law and state law is impossible; or (2) the state law "creates an unacceptable 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wyeth,* 555 U.S. at 577.

---

[5] Here, field preemption is foreclosed by *Dreamscape Design, Inc. v. Affinity Network, Inc.*, 414 F.3d 665 (7th Cir. 2005), in which the Seventh Circuit noted that "it is clear that Congress envisioned some role for state law after detariffing, so federal law no longer completely preempts the entire field." *Id.* at 673.

The Seventh Circuit has determined that sections of the FCA preempt Illinois state laws. *See e.g., Boomer v. AT & T Corp.*, 309 F.3d 404, 418, 424 (7th Cir. 2002) (state law challenges to the arbitration clause in a telephone service contract were preempted by § 202(a) of the FCA). However, the Seventh Circuit has not yet determined whether § 415(a) preempts state statutes of limitations for purposes of actions based on billing disputes.[6] The Fifth Circuit is the only federal court of appeals to have considered this question, and it held that § 415(a) did not preempt state statutes of limitations. *See Castro v Collecto, Inc.*, 634 F.3d 779, 785 (5th Cir. 2011). Since *Castro* was decided, federal courts have overwhelmingly agreed that state court claims aimed at collecting debts incurred from the non-payment of untariffed charges can be pursued after the two-year statute of limitations in § 415(a) has run. *See, e.g., Greene v. Midland Credit Mgmt., Inc.*, No. 17 CV 1322, 2019 WL 102410, at *3 (D.N.J. Jan. 3, 2019) ("the two-year statute of limitations in the FCA only applies to rates that are tariffed by the Federal Communications Commission, and the agreements at issue here are not tariffed"). The Court looks to these decisions for guidance.

## 1. Express Preemption

---

[6] Courts in this district have enforced the statute of limitations in § 415(a) against debt collectors without considering preemption. *See Martin v. Cavalry Portfolio Servs., LLC*, No. 07 CV 4745, 2008 WL 4372717, at *1 (N.D. Ill. Mar. 28, 2008) (applying two year statute of limitations, without objection by defendant, in FDCPA claim involving attempts to collect overdue telephone bills); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800, 802, 803–04 (N.D. Ill. 2008) (same); *Cotton v. Asset Acceptance, LLC*, No. 07 CV 5005, 2008 WL 2561103 at *3, *5 (N.D. Ill. June 26, 2008) (acknowledging that "whether the FCA statute of limitations applies" was an open question in a class action alleging FDCPA violations by debt collectors, but certifying the class because "potential class members will have telephone bills that contain both federally-regulated interstate charges in which the federal two-year statute of limitations may apply [. . .] and state-regulated intrastate charges").

Mixon asks the Court to focus its preemption analysis on the plain text of § 415(a). She argues that when the FCA says "all actions" over "lawful charges" are subject to a two-year statute of limitations, it means *all actions*, including those brought pursuant to state laws to collect delinquent debts. This argument runs into two problems: first, the ambiguity of the phrase "lawful charges," and second, the conflicting language in §§ 414 and 332(c)(3) of the FCA.

### i. "Lawful charges"

This Court is not convinced that the phrase "lawful charges" is unambiguous, for numerous reasons. First and foremost, Congress did not define "lawful charges" in the FCA. *See Castro v Collecto, Inc.*, 634 F.3d 779, 785 (5th Cir. 2011). Second, federal courts that have considered the FCA's legislative history have found that in 1934 "the term 'lawful charges' was practically interchangeable with the term 'tariffed charges,' because the only charges that any phone company could lawfully collect were those that had been filed with the FCC." *Id.* (quoting *Kan. City S. Ry. Co. v. Carl*, 227 U.S. 639, 653 (1913)) ("[Under the] filed rate doctrine [. . .] 'the rate of the carrier duly filed is the only lawful charge.")). Third, where the word "lawfully" appears in § 415(g), it refers to tariffed charges. That section defines "overcharges" as "charges for services in excess of those applicable thereto under the schedules of charges *lawfully on file with the Commission*." § 415(g). When 415(a) is read beside 415(g), one plausible reading of "lawful charges" is charges "*lawfully* on file with the Commission," or tariffed charges. *See Castro*, 634 F.3d at 786, (citing § 415(g)). Finally, there is reason to find Congress only intended the statute of limitations in

8

415(a) to govern tariffed charges. Given that tariffed rates approved by the FCC sometimes differed from advertised or contractual rates, Congress may have expected that carriers would bring actions against their customers to recover the *difference* between the tariffed ("lawful") rate approved by the FCC and the rate a consumer had originally contracted to pay. Congress might have intended § 415(a) to be the statute of limitations for only those actions. When "the text of a [statute] is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC,* 554 U.S. 431, 449 (2005)).

### ii. Saving Clauses

The other obstacle to finding express preemption is the language in §§ 414 and 332(c)(3) of the FCA. If "lawful charges" is read as Mixon proposes, it expressly preempts actions to collect delinquent debts brought in state court. The touchstone of preemption analyses is Congressional intent, however, not text. *Wyeth*, 555 U.S. at 565. This means that the Court must look beyond the plain language of § 415(a) and consider "the statutory framework surrounding it." *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996). That "statutory framework" includes two saving clauses: §§ 414 and 332(c)(3).

As noted above, § 414 says that "[n]othing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." State law actions to recover damages for breach of contract existed at the time §§ 414 and 415(a) were enacted.

*See Espinal v. AFNI, Inc.*, No. 17 CV 3439, 2018 WL 2733366, at *1 (S.D.N.Y. June 7, 2018) (holding that "remedies now existing at common law" such as state law claims, are not barred by either field preemption or conflict preemption per § 414).

Similarly, § 332(c)(3) provides, with respect to cellular service specifically, that state governments may regulate "terms and conditions" but not "rates charged." The legislative history of that provision specifically indicates that "terms and conditions" includes "billing practices" *See Torres v. Midland Credit Mgmt., Inc.*, No. 17 CV 2794, 2018 WL 2304771, at *8-9 (E.D.N.Y. May 21, 2018) (citing H.R. REP. 103–111, 261, 1993 U.S.C.C.A.N. 378, 588); *see also Cook v. First Cellular of S. Ill.,* No. 05 CV 4061, 2005 WL 8173830, at *2 (S.D. Ill. July 7, 2005) ("the saving clause contained in § 332(c)(3)(A)" allows for "state claims not touching on rates or market entry"); *Moriconi v. AT & T Wireless PCS, LLC*, 280 F. Supp. 2d 867, 874 (E.D. Ark. 2003) ("the legislative history [of § 332] supports the finding that Congress specifically intended to reserve for states the right to regulate and resolve such matters as "customer billing information," "billing disputes," and "other consumer protection matters"). Read as a whole, the statutory framework of the FCA does not support Mixon's conclusion that § 415(a) was intended to expressly preempt state law actions to collect delinquent cellular service debts.

### 2. Implied Preemption

Mixon also argues that "even where an express preemption saving clause [such as § 414 or § 332(c)(3), perhaps] demonstrated Congress's intent to exempt common-law actions from preemption" courts must still search for "implied (conflict)

10

preemption." (Dkt. 26 at 9, citing *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000)). Conflict preemption "occurs when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *United States v. Locke*, 529 U.S. 89, 109 (2000) (internal quotation marks omitted).

First, Mixon argues that compliance with both state and federal law is impossible because § 415(a) says that "all actions" by carriers to recover lawful charges must be brought within two years, while the Illinois statute of limitations allows them to be filed with five or ten years, depending on the action. As discussed above, while this is *one* possible reading of § 415(a), it is not the only reading. Another plausible reading, which several courts have adopted, is that only actions to recover *tariffed* charges must be brought within two years, while action to recover *untariffed* charges (such as cell phone charges owed by Mixon) may be brought in accordance with state statute of limitations. Read this way, state statutes of limitations are preempted with respect to tariffed charges, but not with respect to untariffed charges. Because Mixon's debt only concerns untariffed charges, compliance with federal and state law is not impossible. *See Espinal v. AFNI, Inc.*, No. 17 CV 3439, 2018 WL 2733366, at *1 (S.D.N.Y. June 7, 2018) (finding at summary judgment that neither conflict preemption nor field preemption prevents collection of a delinquent cell service bill within New York's six-year statute of limitations rather than the FCA's two-year statute of limitations); *Torres v. Midland Credit Mgmt., Inc.*, No. 17 CV 2794, 2018 WL 2304771, at *8 (E.D.N.Y. May 21, 2018) (following *Castro* court and

"declin[ing] to interpret the term ['lawful charges'] in such a way that conflict preemption would apply" and § 415(a) would preempt state statutes of limitations).

Second, Mixon argues that the Defendant's proposed reading of § 415(a) would make state statutes of limitations an obstacle to the purposes of Congress because "detariffing is virtually universal." (Dkt. 26, 6). It is true that reading "lawful charges" as "tariffed charges" renders the statute of limitations in § 415(a) inapplicable in most cases today. But given the proliferation of cellular telephone service and detariffing, and based on the legislative history contained in § 332(c)(3), the Court concludes that Congress did not intend to continue requiring virtually all causes of actions by carriers against consumers to be brought within two years. *See Dreamscape Design, Inc. v. Affinity Network, Inc.*, 414 F.3d 665, 666 & 673 (7th Cir. 2005) ("it is clear that Congress envisioned some role for state law after detariffing").

Finally, Mixon argues that state law would frustrate the purposes of Congress if "lawful rates" were understood to mean "tariffed rates" because "[t]here is a need for a uniform federal statute of limitation for interstate telecommunications charges" and Congress "enacted § 415(a) to prevent forum-shopping and pointless litigation over applicable law." (Dkt. 26, 6). Mixon presents no evidence that allowing carriers to bring claims pursuant to state law would encourage forum shopping. Rules governing the proper forum for deciding contract disputes would prevent a carrier from suing debtors in faraway state courts with the longest statute of limitations. The Court also rejects the notion that compliance with state statutes of limitations would flood the state courts with unfamiliar claims since cell phone debt collectors

12

already routinely sue debtors in state court. *See e.g. Martin v. Cavalry Portfolio Servs., LLC*, No. 07 CV 4745, 2008 WL 4372717, at *1 (N.D. Ill. Mar. 28, 2008) (debtors allege class claims against cell phone debt collector that filed state actions in violation of federal statute of limitations).

## IV. Conclusion

Since *Castro* was decided, federal courts have agreed that state law claims aimed at collecting debts incurred from the non-payment of untariffed charges can be pursued in compliance with the relevant state statute of limitations. This Court is persuaded by the reasoning in *Castro* that the statute of limitations set by Illinois applies here. Therefore, Mixon has not stated a cause of action for false, misleading, unfair, or unconscionable debt collection in violation of the FDCPA. For the foregoing reasons, Defendant's motion to dismiss (Dkt. 12) is granted. The Complaint is dismissed with prejudice.

E N T E R:

Dated: March 24, 2021

_____
MARY M. ROWLAND
United States District Judge

13